UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DEMETRICE WILLIAMS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-11974** |
| **(WARDEN) SANDY MCCAIN, ET AL.** | **SECTION "F"(4)** |

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

**I.     Factual and Procedural Background**

The petitioner, Demetrice Williams ("Williams"),[2] is a convicted inmate incarcerated in the Raymond Laborde Correctional Center in Cottonport, Louisiana.[3] On March 25, 2009, Williams was indicted by a St. Bernard Parish Grand Jury for the aggravated rape of J.J., a child under the age of 13, that occurred on or about the month of December, 1999.[4] The State presents the facts leading to Williams's indictment:[5]

> On or about December 12, 2008, J.J (7/14/90) disclosed to Sgt. Canepa three separate instances of aggravated rape committed in St. Bernard Parish by Demetrice

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]The Court notes the discrepancies in the spelling of Petitioner's name and adopts the spelling "Demetrice Williams" from Petitioner's Original Deficient Petition. *See* Rec. Doc. No. 1 and Rec. Doc. No. 3 (Petitioner spelling his name "Demetrius Williams Sr.").

[3]Rec. Doc. No. 3.

[4]St. Rec. Vol. 1 of 1, Indictment, 3/25/09. The Court refers to the minor victim by her initials.

[5]Rec. Doc. No. 11-1, pp. 5-6. Because Williams entered a plea of guilty, the record and state court opinions do not include the underlying facts of the case. In its opposition, the State provided the facts repeated here.

Williams, the husband of J.J.'s mother. During the interview, J.J. stated that her mother married Petitioner in 1995. Although she primarily lived with her grandmother, J.J. would go visit and stay with her mother and Petitioner about twice a month.

The first rape occurred on an unknown day, when J.J. was just seven (7) years old. While at her mother and Petitioner's house, Petitioner demanded that J.J. touch his penis with her hand under his underwear. After J.J. complied, Petitioner removed J.J.'s pants and underwear and penetrated her vagina with his penis. After approximately ten minutes of vaginal sexual intercourse with J.J., Petitioner wiped her body with a towel, placed an unknown jelly-like substance on J.J.'s vagina, and advised her to get dressed.

The second rape occurred on an unknown night, when J.J. was approximately nine (9) years old. Petitioner advised J.J. to sleep in his bedroom since J.J.'s mother was not at home. When J.J. walked into the bedroom, Petitioner was naked and took an unknown object out of his dresser drawer. Petitioner removed J.J.'s pajama bottoms and penetrated her vagina with his penis. After approximately ten (10) minutes of having vaginal intercourse, Petitioner removed his penis from J.J.'s vagina, wiped her body with a towel, and told her to go back to her bedroom.

The third rape occurred on an unknown day, approximately two months after the second rape. While in the living room of the residence, Petitioner demanded that J.J. remove her shorts and sit on his lap. J.J. complied and Petitioner removed his penis from his boxer shorts and penetrated J.J.'s vagina with his penis. Moments later, J.J.'s half-sister entered the room and quickly turned around to exit the room. Petitioner demanded J.J. get dressed and go into the children's bedroom.

On October 6, 2009, Williams entered plea of guilty to the reduced charge of attempted aggravated rape.[6] After waiver of legal delays, the state trial court sentenced him to serve twenty-four (24) years in prison without benefit of parole, probation, or suspension of sentence.

Williams's conviction was final under federal law thirty (30) days later, on November 5, 2009, because he did not timely seek reconsideration of the sentence or move for leave to appeal. La. Code Crim. P. art. 914;[7] *Butler v. Cain*, 533 F.3d 314, 317 (5th Cir. 2008) ("[A] conviction

---

[6]St. Rec. Vol. 1 of 1, Plea Minutes, 10/6/09; Plea Transcript, 10/6/09.

[7]Louisiana law requires a criminal defendant to move for leave to appeal within thirty (30) days of the order or judgment being appealed or a ruling on a timely motion to reconsider a sentence. La. Code Crim. P. art. 914 (as amended La. Acts 2003, No. 949, § 1). Failure to move timely for appeal under Art. 914 rendered the conviction and sentence final at the expiration of that period. *State v. Counterman*, 475 So.2d 336, 338 (La. 1985).

becomes final when the time for seeking further direct review in the state court expires.") (quoting *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003)).

Almost two years later, on September 22, 2011, Williams through counsel filed with the state trial court an application for post-conviction relief asserting two claims:[8] (1) he was denied due process when the prosecution failed to turn over evidence favorable to the defense that was requested during discovery; and (2) counsel provided ineffective assistance when he failed timely to subpoena witnesses and records. On September 12, 2013, following several hearings and additional briefing, the state trial court denied the application finding the claims meritless.[9]

On May 8, 2014, the Louisiana Fourth Circuit Court of Appeal summarily denied Williams's counsel-filed writ application seeking review of that order.[10] The Louisiana Supreme Court also denied his counsel-filed writ application on March 27, 2015, without stated reasons.[11]

More than seventeen months later, on August 30, 2016, Williams filed pro se a second application for post-conviction in which he asserted that his guilty plea was unconstitutional because he would be subject to the sex offender registration requirements.[12] The state trial court appointed counsel and allowed additional briefing.[13] On May 31, 2017, the state trial court

---

[8]St. Rec. Vol. 1 of 1, Application for Post-Conviction Relief, 9/22/11.

[9]St. Rec. Vol. 1 of 1, Trial Court Judgment, 9/12/13; *see also*, Hearing Minutes, 12/6/11; Hearing Minutes, 2/28/12; Hearing Minutes, 4/10/12; Hearing Minutes, 7/12/12; Hearing Minutes, 9/19/12; Hearing Transcript, 9/19/12; Post-Trial Memorandum, 2/6/13.

[10]St. Rec. Vol. 1 of 1, 4th Cir. Order, 2014-K-0018, 5/8/14.

[11]*State v. Williams*, 162 So.3d 377 (La. 2015); St. Rec. Vol. 1 of 1, La. S. Ct. Order, 2014-KP-1197, 3/27/15.

[12]St. Rec. Vol. 1 of 1, Application for Post-Conviction Relief, 10/26/16 (dated 8/30/16). The record reflects that Williams first submitted his application to the state trial court on August 30, 2016, and he was then provided with form documents to complete. The application eventually was file-stamped October 26, 2016. *See* St. Rec. Vol. 1 of 1, Letter to Court, 8/10/16; Letter to Williams, 9/21/16; Letter to Court, 10/17/16.

[13]St. Rec. Vol. 1 of 1, Hearing Minutes, 11/29/16; Memorandum in Support, 3/21/17; State's Opposition, 3/31/17; Supplemental Memorandum in Support, 4/17/17; State's Supplemental Memorandum, 4/25/17.

overruled the State's procedural objections of successiveness and untimeliness and granted Williams an evidentiary hearing on his claims.[14]

The State sought review in the Louisiana Fourth Circuit.[15] On July 25, 2017, the Court granted the application, reversed the state trial court, and denied Williams's post-conviction application as untimely under La. Code Crim. P. art. 930.8.[16]

Both Williams and his counsel sought review of the appellate court's ruling in the Louisiana Supreme Court.[17] On October 29, 2018, the Court denied the counsel-filed writ application for seeking untimely review under La. Code Crim. P. art. 930.8 and *State ex rel. Glover v. State*, 660 So.2d 1189 (La. 1995) and as repetitive under La. Code Crim. P. art. 930.4.[18] That same day, the Court denied Williams's pro se writ application as moot citing its other order.[19]

Several weeks later, on December 6, 2018, Williams submitted to the state trial court a motion to correct his allegedly illegal sentence.[20] After the Louisiana Fourth Circuit granted mandamus relief, the state trial court denied the motion on March 13, 2019, as repetitive and successive of the two prior applications for post-conviction relief.[21] On June 13, 2019, the Louisiana Fourth Circuit denied his related writ application for the same reasons as the trial court.[22]

---

[14]St. Rec. Vol. 1 of 1, Hearing Minutes, 5/31/17; *see also* Hearing Minutes 1/24/17, Hearing Minutes, 4/25/17.

[15]St. Rec. Vol. 1 of 1, 4th Cir. Writ Application, 2017-K-0507, dated 6/12/17.

[16]St. Rec. Vol. 1 of 1, 4th Cir. Order, 2017-K-0507, 7/25/17.

[17]St. Rec. Vol. 1 of 1, La. S. Ct. Letter, 2017-KP-1465, 8/25/17; La. S. Ct. Letter, 2017-KH-1495.

[18]*State v. Williams*, 255 So.3d 589 (La. 2018); St. Rec. Vol. 1 of 1, La. S. Ct. Order, 2017-KP-1465, 10/29/18.

[19]*State ex rel. Williams v. State*, 254 So.3d 698 (La. 2018); St. Rec. Vol. 1 of 1, La. S. Ct. Order, 2017-KP-1495, 10/29/18.

[20]St. Rec. Vol. 1 of 1, Motion to Correct an Illegal Sentence, 12/18/18 (dated 12/6/18).

[21]St. Rec. Vol. 1 of 1, Trial Court Order, 3/13/19; Trial Court Order (2), 3/13/19; 4th Cir. Order, 2019-K-0166, 3/6/19; 4th Cir. Mandamus Application, 2019-K-0166, 2/21/19 (dated 2/7/19).

[22]St. Rec. Vol. 1 of 1, 4th Cir. Order, 2019-K-0454, 6/13/19; 4th Cir. Writ Application, 2019-K-0454, dated 5/17/19.

## II.     Federal Petition

On August 21, 2019, after correction of certain deficiencies, the clerk of this Court filed Williams's federal petition for habeas corpus relief in which he asserts that his guilty plea was obtained in violation of his constitutional rights where the state withheld evidence of his innocence and his counsel was negligent.[23] The State filed a response in opposition asserting that Williams's federal petition should be dismissed as untimely filed and otherwise for failure to state a cognizable federal claim.[24]

## III.     General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[25] applies to Williams's petition, which is deemed filed in this Court under the mailbox rule on July 30, 2019.[26] The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies

---

[23] Rec. Doc. No. 3.

[24] Rec. Doc. No. 11.

[25] The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes are effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[26] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court initially docketed Williams's deficient petition on July 30, 2019, when it was received. The corrected petition was filed August 21, 2019, and Williams later paid the filing fee. Williams dated his signature on the original pleading on July 30, 2019. This is the earliest date appearing in the record on which Williams could have handed his pleadings to prison officials for mailing to a federal court. Payment of the filing fee does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002).

and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State asserts and the record shows that Williams's federal petition was not timely filed under the AEDPA. For the following reasons, the petition should be dismissed as time-barred.

## IV.     Statute of Limitations

The AEDPA codified in 28 U.S.C. § 2244(d)(1)(A) requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[27] *Duncan v. Walker*, 533 U.S. 167, 176-80 (2001). As stated above, Williams's conviction was final under federal law on November 5, 2009, when he did not seek review of his conviction or sentence. Pursuant to § 2244, Williams had one year from that date, or until November 5, 2010, to timely file a federal application for habeas corpus relief, which he did not do. Thus, literal application of the statute would bar Williams's petition as of that date unless he is entitled to tolling as provided for under the AEDPA.

### A.     Statutory Tolling

Section 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is

---

[27]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
  A.   the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
  B.   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
  C.   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
  D.   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. 28 U.S.C. § 2244(d).

pending shall not be counted toward any period of limitation. *See* 28 U.S.C. § 2244(d)(2). In order for a state post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Williams v. Cain*, 217 F.3d 303, 306-08 & n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 468-69 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999). For purposes of the AEDPA, a timeliness calculation in Louisiana requires the application of the prison mailbox rule to state pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006). The Court has applied this rule in presenting the procedural history recited above.

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999)) (finding that a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (finding that a state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir. 2001), *overruled on other grounds by Carey*, 536 U.S. at 214 (finding that a motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in

7

the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 687-88 (5th Cir. 2005).

In Williams's case, the AEDPA filing period began to run on November 6, 2009, the day after his conviction was final under federal law. The one-year AEDPA filing period continued to run uninterrupted for one year, until November 5, 2010, when it expired. Williams had no properly filed state application for post-conviction relief or other collateral review pending in the state courts during this time period. Williams first state court post-conviction pleading was filed by his counsel on September 22, 2011, well after the AEDPA filing period expired. Williams is not entitled to renewal of the filing period or other tolling benefits for pleadings filed after the AEDPA one-year limitations period has already expired. *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000) (a filing made after the expiration of the AEDPA one-year filing period does not renew or extend the AEDPA filing period or provide a petitioner any tolling benefits); *Higginbotham v. King*, 592 F. App'x 313, 314 (5th Cir. 2015) (same).

Williams's federal petition deemed filed under the mailbox rule on July 30, 2019, was filed eight years and almost nine months after the AEDPA filing period expired on November 5, 2010. His federal petition was not timely filed and should be dismissed with prejudice for that reason.

B.   **No Equitable Tolling**

The post-AEDPA jurisprudence also provides for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus. *Pace*, 544 U.S. at 419; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). Williams has

not presented, and the record does not demonstrate, any basis for extending the extraordinary remedy of equitable tolling to the § 2244(d) calculation.

Equitable tolling is warranted <u>only</u> in situations where the petitioner was actively misled or is prevented in some extraordinary circumstance outside of his control from asserting his rights. *Pace*, 544 U.S. at 418-19; *see Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002); *see Holland v. Florida*, 560 U.S. 631, 652-53 (2010) (finding that equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests to timely file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); *Hardy v. Quarterman*, 577 F.3d 596, 599-600 (5th Cir. 2009) (finding that equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002) (finding that tolling was warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (quotation omitted) ("A garden variety claim of excusable neglect does not support equitable tolling."); *Fisher*, 174 F.3d at 715 (finding that tolling is not justified during petitioner's seventeen-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); *Cantu-Tzin*, 162 F.3d at 300 (finding that State's alleged failure to appoint competent habeas counsel did not justify tolling); *Davis*, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended the deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

Williams has made no such showing in this case, and he is not entitled to equitable tolling of the one-year AEDPA limitations period. His federal petition was not timely filed and should be dismissed with prejudice for that reason.

### C. No Actual Innocence Exception

Williams claims that he has proof that he was incarcerated during the month of December, 1999, which is the month stated in the indictment as the time when the rapes took place. He suggests that this would prove his innocence, and he should be allowed to withdraw his guilty plea.

The Supreme Court has held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass" notwithstanding the "expiration of the statute of limitations" under the AEDPA. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). "This rule, or fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *Id*. at 392, (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).

The Supreme Court, however, has cautioned that "[t]he miscarriage of justice exception, we underscore, applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *Id*. at 394-95 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). The Supreme Court has made clear that "habeas corpus petitions that advance a substantial claim of actual innocence are extremely rare." *Schlup*, 513 U.S. at 321.

Thus, the Supreme Court construes the "actual innocence" doctrine narrowly. *See Sawyer v. Whitley*, 505 U.S. 333, 339-40 (1992) (explaining that the actual innocence doctrine is "narrow" and typically "concerned with actual as compared to legal innocence"). The Court has held that the concept of actual innocence is different from the concept of legal innocence. *Id*. at 339-40;

10

*Smith v. Murray*, 477 U.S. 527, 537 (1986).  "In the context of a noncapital case, the concept of 'actual innocence' is easy to grasp," and means simply a "mistake" was made and "the State has convicted the wrong person of the crime."  *Sawyer*, 505 U.S. at 341.

In applying the actual innocence doctrine, the United States Fifth Circuit Court of Appeals has held that evidence is "not 'new' [when] it was always within the reach of [petitioner's] personal knowledge or reasonable investigation."  *Moore v. Quarterman*, 534 F.3d 454, 465 (5th Cir. 2008); *Hancock v. Davis*, 906 F.3d 387, 389 (5th Cir. 2018), *cert. denied*, 139 S. Ct. 2714 (2019) ("[e]vidence does not qualify as 'new' under the *Schlup* actual-innocence standard if 'it was always within the reach of [petitioner's] personal knowledge or reasonable investigation.'") (quoting *Moore*, 534 F.3d at 465).  In this case, however, Williams has not presented any <u>new</u> evidence of his alleged actual innocence based on December 1999 as the crime date averred in the indictment.

The questions of Williams's incarceration during December of 1999 and whether he could have committed rapes in December of 1999 were matters known and considered by Williams and his counsel prior to the plea of guilty.  Williams's trial counsel testified on state post-conviction review that, early in the case, Williams advised that he was incarcerated in December of 1999 when the alleged rapes occurred.[28]  Williams's counsel also testified that he investigated the dates of Williams's incarceration and subpoenaed the records from the Sheriff's office.[29]  After receiving the subpoena, the head of criminal records for the Sheriff's Office requested that Williams's counsel go to her office to review the records.[30]  The officer also informed counsel that the

---

[28]St. Rec. Vol. 1 of 1, Hearing Transcript, pp. 14-16, 9/19/12.

[29]*Id*. at 5-6, 20.

[30]*Id*. at 6.

11

restricted records could not be copied, but she agreed to appear in court for trial and bring the documents.

Williams's counsel conceded in his testimony that Louisiana law did not require that the exact dates of the rapes be included in the indictment for this type of charge.[31]  However, even if the State amended the indictment before trial to remove the date, he planned to use the incarceration records to show that Williams "was actually incarcerated during the periods of time that the bill of information indicated that he committed these criminal acts."[32]

Thus, Williams's counsel was well-aware of the incarceration records and planned to use those records and the dates of incarceration to challenge the victim's credibility at trial and to bolster the defense's arguments to the jury.[33]  Therefore, Williams had the alleged exculpatory information available for trial.  His counsel simply had no opportunity to present the evidence or argument at a trial because of Williams's guilty plea.  *Accord Boykin v. Alabama*, 395 U.S. 238, 242 (1969) ("A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment.") For these reasons, the information Williams now relies on to bypass the AEDPA statute of limitations is not new and does not invoke the rare actual innocence exception under *Schlup* or *McQuiggin*.

    **D.**    **No Exception under *Martinez***

Although Williams's petition asserts claims of ineffective assistance of trial counsel, the United States Supreme Court's holdings in *Martinez v. Ryan*, 566 U.S. 1 (2012) and *Trevino v.*

---

[31] *Id.* at 16-20.
[32] *Id.* at 16-20, 22.
[33] *Id.* at 22-23.

*Thaler*, 569 U.S. 413 (2013), do not provide a basis for review of his untimely filed federal petition or his ineffective assistance of trial counsel claims. In *Martinez*, the Supreme Court held that a state court imposed "'procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [state court's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.'" *Trevino*, 569 U.S. at 417 (quoting *Martinez*, 566 U.S. at 17) (emphasis added). Neither is at issue in this case.

Instead, the bar to review at issue here arises from Williams's failure to meet the federal limitations deadline under the AEDPA. The *Martinez* and *Trevino* decisions do not address or provide an excuse for the untimely filing of a federal habeas petition. *See Arthur v. Thomas*, 739 F.3d 611, 631 (11th Cir. 2014) ("Thus, we also hold that the reasoning of the *Martinez* rule does not apply to AEDPA's limitations period in § 2254 cases or any potential tolling of that period."); *Smith v. Rogers*, No. 14-0482, 2014 WL 2972884, at * 1 (W.D. La. Jul. 2, 2014); *Falls v. Cain*, No. 13-5091, 2014 WL 2702380, at *3 (E.D. La. Jun. 13, 2014) (Order adopting Report). The *Martinez* and *Trevino* opinions also do not constitute new rules of constitutional law made retroactive on collateral review to start a new one-year filing period under the AEDPA. *See In re Paredes*, 587 F. App'x 805, 813 (5th Cir. 2014) (". . . the Supreme Court has not made either *Martinez* or *Trevino* retroactive to cases on collateral review, within the meaning of 28 U.S.C. § 2244."); *Adams v. Thaler*, 679 F.3d 312, 322 n.6 (5th Cir. 2012). Thus, neither *Martinez* nor *Trevino* provide Williams's relief from the untimeliness of his federal petition.

### V.    Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Demetrice Williams's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

...

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[34]

New Orleans, Louisiana, this 23rd day of January, 2020.

*[signature]*

_____
**KAREN WELLS ROBY
CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[34]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.